UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATRICE R.,

          Plaintiff,

     v.                                    **DECISION AND ORDER**

                                              23-CV-690S

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

        1.      Plaintiff Patrice R.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for supplemental security income under Title XVI of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.      Plaintiff protectively filed her application with the Social Security Administration on October 31, 2018.  She alleged disability beginning on November 1, 2017, due to osteoarthritis in her right knee, morbid obesity, post-traumatic stress disorder ("PTSD"), spondylosis of the lumbar spine, Lisfranc injury to the mid left foot, depression, anxiety, issues with reading, and right carpal tunnel syndrome, status post release surgery.  Her application was denied and she thereafter requested a hearing before an administrative law judge ("ALJ").

        3.      On May 23, 2022, ALJ Stephan Bell began an in-person hearing at which Plaintiff, represented by a non-attorney representative, appeared and testified but that

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

hearing was continued due to a technical issue.  (R.[2] at 29, 69, 87-113).  On June 8, 2022, the ALJ concluded the telephonic hearing at which Plaintiff, still represented by a paralegal, and Vocational Expert Eric Dennison appeared and testified.  (R. at 29, 67-86.)  At the time of the hearings, Plaintiff was a 49-year-old woman with a limited education but no past relevant work experience.  (R. at 55.)

4.   The ALJ considered the case *de novo* and, on June 24, 2022, issued a written decision denying Plaintiff's application for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5.   Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 9, 13.)  Plaintiff filed her Reply on January 23, 2024 (Docket No. 14), stating that no formal reply was warranted (id. at 1).  This Court then took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion will be denied and Defendant's Motion will be granted.

6.   A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ's June 24, 2022, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

2

"more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 26 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

9.      The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.     Although the claimant has the burden of proof at the first four steps, this burden shifts to the Commissioner at the fifth and final step. See Yuckert, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

11.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date.  (R. at 31.)  At Step Two, the ALJ found that Plaintiff had the following severe impairments:  osteoarthritis of her right knee, spondylosis of the lumbar spine, morbid obesity, and Lisfranc (mid foot) injury to her left foot.  (R. at 32.)  At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 39-40.)

12.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work subject to the following limitations.  The ALJ found that Plaintiff could lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently, and could sit for 6 hours, stand for 2 hours, and walk for 2 hours total during an 8-hour workday.  The ALJ also observed that Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds while occasionally balance, stoop, kneel, crouch, and crawl.  Finally, the ALJ found that Plaintiff could never work in vibration. (R. at 40.)

13.     At Step Four, the ALJ found that Plaintiff had no past relevant work.  (R. at 55.)  At Step Five, the ALJ concluded that there are jobs that existed in significant numbers in the national economy that Plaintiff could perform by suggesting hypotheticals to the Vocational Expert.  (R. at 55-58.)  The ALJ posed whether there exist jobs in the national economy that a claimant of Plaintiff's age, education, work experience, and RFC could perform.  The Expert opined that such a hypothetical claimant could perform such

representative sedentary jobs as an order clerk, ink printer, and lens inserter.  (R. at 56.)  Accordingly, the ALJ found that Plaintiff was not disabled.  (R. at 56.)

14. Plaintiff now argues that the ALJ improperly evaluated the treating opinions of NP Kimberley Wilson[4] which Plaintiff claims established her impairments from back pain, obesity, and other conditions.  She contends that NP Wilson's opinions were internally consistent.  Plaintiff argues that the ALJ disregarded NP Wilson's findings of moderate limitations and Plaintiff's need for breaks.

15. For the reasons that follow, this Court concludes that these arguments are unavailing.

16. For post-March 27, 2017, applications, Social Security regulations require the agency consider the persuasiveness of a medical opinion.  See, e.g., 20 C.F.R. § 416.920c(a).  The Social Security Administration does not defer or give any specific evidentiary weight to any medical opinion, id., but considers the supportability and consistency of the opinions as the most important factors in assessing their persuasiveness, id. § 416.920c(c)(1), (2), (b)(2).  The ALJ must explain his approach with respect to supportability and consistency when considering a medical opinion.  Melissa F. v. Comm'r, No. 1:20-CV-1363 (WBC), 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021) (citing, for example, 20 C.F.R. § 416.920c(b)).

17. The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive that opinion will be, while the more relevant the objective medical evidence and supporting explanations presented by the medical source in support of their opinion is, the more persuasive that medical

---

[4] Kimberley Wilson later earned a Doctor of Nursing Practice.  R. at 54.  Hereinafter, however, she will be referenced by her former title as "NP Wilson," the title she had during most of the period at issue.

6

opinion would be.  20 C.F.R. § 416.920c(c)(2), (1).  This consistency under the Social Security regulations requires the ALJ only compare medical opinions with "the evidence from other medical sources and nonmedical sources in the claim," 20 C.F.R. § 416.920c(c)(2), and not their internal consistency.  See Wendy V. v. Comm'r, No. 5:22-CV-1185 (LEK), 2024 WL 1069933, at *10 (N.D.N.Y. Mar. 12, 2024).  Plaintiff cites cases where consistency of a medical opinion was compared with opinions from other sources without discussing the internal consistency of a medical source's opinions.  (Cf. Docket No. 9, Pl. Memo. at 9-10, citing John F. v. Comm'r, Case # 20-cv-01003, 2021 WL 3851988, at *5 (W.D.N.Y. Aug. 27, 2021) (the ALJ found to have failed to address the consistency of opinions from different doctors and not their internal consistency); Rodriguez v. Kijakazi, No. 20-CV-6829 (JLC), 2021 WL 5292751, at *16 (S.D.N.Y. Nov. 15, 2021) (same, reviewing consistency of opinions between two doctors' opinions); Gary F. v. Comm'r, No. 6:20-CV-6735-LJV, 2022 WL 16540354, at *4 (W.D.N.Y. Oct. 28, 2022) (same)).

18. In this case, NP Wilson diagnosed Plaintiff on August 8, 2016, with back pain with radiation, morbid obesity, and other ailments, stating that Plaintiff was given a note that she could not work.  (R. at 554; see R. at 40, 92, 98.)

19. NP Wilson rendered a series of disability assessments at issue in this case. (R. at 541, 549, 583, 865, 1213, 1261.)  First, on June 21, 2018, NP Wilson reported Plaintiff's employability assessment to the New York State Office of Temporary and Disability Assistance.  There, she opined that Plaintiff could not work because of her chronic back pain, morbid obesity, and depression.  (R. at 541, 542.)  NP Wilson also noted that Plaintiff had very limited functionality in climbing stairs and other objects and

7

moderate limitations in walking, standing, sitting, lifting, carrying, pushing, pulling, and bending.  (R. at 542.)

20. On October 19, 2018, NP Wilson reported to the Erie County Department of Social Services that Plaintiff could not sit for prolonged periods or stand or walk beyond 20 minutes at a time due to chronic back and knee pain, arthritis, and other physical limitations.  (R. at 549, 583.)  The Department of Social Services asked if Plaintiff's impairments caused symptoms severe enough that they would cause her to take unscheduled days off or otherwise miss appointments or commitments.  NP Wilson answered yes, reporting that Plaintiff would be off-task and her impairments would cause her to take 1-2 unscheduled days off each month.  (R. at 549.)

21. The Department of Social Services then asked, "what percentage of an 8 hour day would you anticipate your patient being off-task?"  NP Wilson answered that Plaintiff could not perform prolonged sitting or standing or walking past 20 minutes at a time, but she did not state a percentage.  (R. at 549.)

22. On September 16, 2019, NP Wilson reported to the Department of Social Services that, due to her "chronic severe pain," Plaintiff would need to take unscheduled breaks or be off task for half a day and potentially be absent from work half of the week at times (R. at 863).

23. On July 27, 2020, NP Wilson then reported to the Department of Social Services that Plaintiff permanently suffered from chronic back pain, as well as asthma, depression, and anxiety, and that she was very limited in walking, standing, lifting, carrying, pushing, pulling, bending, and climbing stairs and other climbing.  (R. at 1213, 1214.)  NP Wilson repeated this assessment on June 21, 2021.  (R. at 1215-16.)

24. Finally, on May 12, 2022, NP Wilson signed a letter in which she opined that Plaintiff was unable to work due to limited ambulation related to her chronic low back pain and chronic bilateral knee pain. She found that Plaintiff had great difficulty climbing flights of stairs and had difficulty performing her own activities of daily living. (R. at 1261.)

25. The ALJ, however, found these opinions not persuasive for two reasons. First, he stated that NP Wilson's June 2018 opinion rendered conclusions on the ultimate question of disability that is reserved to the Commissioner. (R. at 51; see R. at 541-42.) Second, the ALJ nevertheless concluded that her assessment was consistent with Plaintiff's daily activities and her diagnostic testing results. (R. at 51.)

26. The ALJ deemed NP Wilson's other opinions were inconsistent with Plaintiff's treatment record including her regular attendance at medical appointments and her apparent ability to walk. (R. at 51, 53, 54-55.) The ALJ found that Plaintiff's walking to physical therapy appointments when she lacked a vehicle, walking at the marina and in a park for exercise, and purchasing a treadmill to help with her weight loss belied NP Wilson's contrary opinions of limitations in prolonged standing or walking. The ALJ also noted instances when Plaintiff walked. (R. at 43, 48, 52, 53, 55, citing R. at 655, 661, 725, 990, 1233.)

27. This Court finds that Plaintiff's physical activities as relied upon by the ALJ support the weight given to NP Wilson's opinions for "[t]he opinions of examining physicians are not controlling if they are contradicted by substantial evidence, be that conflicting medical evidence or other evidence in the record." Krull v. Colvin, 669 F. App'x 31, 32 (2d Cir. 2016); see Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002). Evidence of Plaintiff's walking and exercise contradicted NP Wilson's opinions. Furthermore, the

9

ALJ need not give any specific evidentiary weight to a medical opinion. See 20 C.F.R. § 416.920c(a). The ALJ had the discretion to assess each of NP Wilson's opinions and findings for their consistency with the overall medical record and how each opinion was or was not supported by NP Wilson's observations and findings.

28.    The ALJ here assessed NP Wilson's opinions by comparing them with the opinions and findings of other providers and evaluators, as well as evidence from Plaintiff's subjective complaints and diagnostic testing. (R. at 51, 53, 54-55.) These findings and other opinions showed the ability of Plaintiff to walk despite her limitations. (Id.) The ALJ exclusively had the role of weighing the persuasiveness of NP Wilson's opinions consistent with supporting evidence in the record and not this Court's. See Perales, 402 U.S. at 399; Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) ("it is for the SSA, and not this court, to weigh the conflicting evidence in the record"). Given this deferential standard of review of the Commissioner's decision, this Court defers to the weight of the evidence made by the ALJ. Krull, 669 F. App'x at 32.

29.    Furthermore, "[a] claimant is not necessarily rendered disabled simply because he or she is moderately limited in sitting or standing." Santiago v. Berryhill, No. 16-CV-6459-FPG, 2017 WL 2728584, at *4 (W.D.N.Y. June 26, 2017) (citing Carroll v. Colvin, No. 13-CV-456S, 2014 WL 2945797, at *4 (W.D.N.Y. June 30, 2014) (Skretny, C.J.)). As this Court observed in Carroll, "several courts have upheld an ALJ's decision that the claimant could perform light or sedentary work even when there is evidence that the claimant had moderate difficulties in prolonged sitting or standing." Carroll, 2014 WL 2945797, at *4  Then-Chief Judge Frank P. Geraci in Santiago reaffirmed this and acknowledged that other ALJ decisions have been upheld where there was evidence of

moderate limitations in sitting and standing provided that the ALJ explained how that claimant could perform light or sedentary work.  Santiago, 2017 WL 2728584, at *4; see Carroll, 2014 WL 2945797, at *4.

30. This Court finds that Plaintiff's walking and her treatment evaluations belie NP Wilson's June 2018 sit/stand limitation opinion.  The ALJ also appropriately relied upon the assessments of state agency evaluators J. Poss, M.D., and Gary Ehlert, M.D., both of whom found that Plaintiff could sit for 6 hours during a workday despite her back and knee pain.  (R. at 51-53; see R. at 220, 236.)  The ALJ deemed these opinions persuasive because they were consistent with the extent of Plaintiff's activities, her subjective complaints, her morbid obesity, and her physical examinations including diagnostic imaging showing severe arthritis in her right knee.  (R. at 40, 52, 53.)

31. From these state agency and consultative opinions, evidence of Plaintiff's own activities, and her treatment record, this Court concludes that the ALJ had sufficient evidence and did not err in the resulting persuasiveness finding.  Plaintiff's Motion for Judgment on the Pleadings on this ground is denied.

32. Plaintiff further argues that the ALJ erred in evaluating four of NP Wilson's opinions[5] by merely citing to entire exhibits from the record rather than citing specific entries from these exhibits.  (Cf. R. at 51, 53-55.)  This Court disagrees.

33. The ALJ here has cited "enough records or provide enough of an explanation such that the Court can glean his rationale."  Loni S. v. Comm'r, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *16 (N.D.N.Y. June 27, 2023).  Specifically, in evaluating NP Wilson's opinions, the ALJ cited treatment notes from 2018 through 2022—

---

[5] From June 21 and October 18, 2018; July 27, 2020; and May 12, 2022.

11

including Plaintiff's subjective complaints and the findings of consultative examiner Nikita Dave, M.D. (R. at 51, 53-55, citing R. at 543-48, 550-92, 628-736, 744-53, 782-89, 796-821, 870-72, 876-952, 957-60, 979-1028, 1055-92, 1108-75, 1181-1211, 1217-59.) The ALJ also discussed in detail instances of Plaintiff walking and noted her use of her treadmill. (R. at 42-48, 43, 48, citing R. at 655, 661, 725, 902, 1142, 1233.)

34. Furthermore, "an ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision.'" Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (per curiam) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)). To consider the consistency with the medical record here the ALJ need not specify each item in the evidence.

35. The instant case differs from the two cases Plaintiff cited where the ALJ cited entire exhibits making it difficult to determine the specific parts of the record that were considered. (Docket No. 9, Pl. Memo. at 13, citing Loni S., 2023 WL 4195887, at *16 n.11; Ameer B. v. Acting Comm'r, No. 1:21-cv-01296 (JJM), 2023 WL 5198793, at *3 (W.D.N.Y. Aug. 14, 2023).) Moreover, it is to be noted in Ameer B. that "[t]he use of an exhibit citation, without more, is insufficient to ensure that the ALJ considered all of the evidence contained in an exhibit." 2023 WL 5198793, at *3.

36. In the present case, however, the ALJ cited specific page citations from the evidence as well as entire exhibits. This Court had no difficulty determining what was considered by the ALJ despite citations to whole exhibits. This Court concludes that the ALJ's record citations permits gleaning the rationale for his decision.

37. As a result, Plaintiff's Motion for Judgment on the Pleadings on this ground is denied.

38. Plaintiff next argues that the ALJ failed to assess her required breaks and off task time as opined by NP Wilson in responses to the Erie County Department of Social Services 2018 and 2019 assessments. She contends that the ALJ erroneously rejected NP Wilson's opinions based on the frequency of Plaintiff's medical absences.

39. The ALJ discounted these assessments finding that NP Wilson apparently misread or misunderstood the question in the 2018 and 2019 forms and furnished unresponsive answers. The ALJ also found that NP Wilson's opinions were inconsistent with Plaintiff's treatment record and from her consistent attendance at physical therapy and counseling. (R. at 51, 53.)

40. This Court finds that the ALJ appropriately assessed NP Wilson's opinions on the need for breaks and Plaintiff being off task. First, NP Wilson did not answer the question in her 2018 opinion of the percentage of a workday Plaintiff would be off task. Instead of giving a percentage, NP Wilson answered that Plaintiff could not sit, stand, or walk longer than 20 minutes at a time. (R. at 549.) If resting only on this opinion, this Court would have to speculate as to the percentage of time Plaintiff would be off task. The ALJ thus properly rejected this unresponsive opinion.

41. Furthermore, this Court finds that the ALJ had substantial evidence from Plaintiff's consistency in attending her medical appointments to refute NP Wilson's opinions that Plaintiff would require frequent absences or otherwise would be off task. Aside from stating two different periods when Plaintiff would be absent (one to two days each month or potentially half of the week at times), NP Wilson does not provide support

for her opinions on the frequency of Plaintiff's absences. (Cf. R. at 549, 863.) Moreover, Plaintiff has not established either the duration or frequency of medical appointments to become disabling absenteeism.

42. Previously, this Court found "that the need for a medical visit does not necessarily equate to missing an entire day of work and that the need for multiple medical visits does not compel disabling absenteeism." Samantha R. v. Comm'r, No. 20-CV-0440-MJR, 2021 WL 2820987, at *5 (W.D.N.Y. July 7, 2021). Furthermore, a claimant could seek treatment during parts of workdays or during non-work hours without creating disabling absenteeism. Robbins v. Saul, No. 18-CV-6592, 2020 WL 1445854, at *4 (W.D.N.Y. Mar. 25, 2020); see also Alysha C. v. Comm'r, No. 20-CV-1178, 2022 WL 464239, at *6 (W.D.N.Y. Feb. 15, 2022) (claimant unsuccessfully argues absenteeism from frequent physical therapy appointments that did not last more than 40 minutes). Plaintiff has not claimed that she would miss entire workdays for her scheduled appointments. Id.; Cavalieri v. Comm'r, No. 17-CV-812, 2019 WL 2710110, at *4 (W.D.N.Y. June 28, 2019) (Skretny, J.).

43. Here, Plaintiff furnishes no evidence when and how long her medical appointments were despite her consistent attendance at her therapy and treatment sessions. Plaintiff thus has not established absenteeism that warrants a finding of disability. Cf. Robbins, 2020 WL 1445854, at *3 (claimant listed 45 appointments during a 21-month period). Therefore, Plaintiff has not shown that her limitations would cause her to miss days at work due to her symptoms or produced evidence in this record to support NP Wilson's opinions on required breaks or being off task. Plaintiff's Motion for Judgment on the Pleadings on this ground also is denied.

44.	Accordingly, having reviewed the ALJ's decision and considered Plaintiff's arguments, this Court finds that the ALJ properly considered NP Wilson's opinions. Evidence of Plaintiff's daily activities, medical findings, the lack of evidence as to the frequency and duration of Plaintiff's medical appointments, and other opinions in the record all support the ALJ's consideration and findings concerning NP Wilson's opinions and the extent of Plaintiff's limitations.  Therefore, Plaintiff's Motion for Judgment on the Pleadings is denied while Defendant's motion is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:	August 19, 2024
	Buffalo, New York


				s/William M. Skretny
				WILLIAM M. SKRETNY
				United States District Judge